No. _____

FILED
IN CLERK'S OFFICE

# 04.10035 RWZ

2004 JAN -7  A 10: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS

_____

SATRON PRIDGEN, PETITIONER

v.

PAUL VERDINI, SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL
INSTITUTION AT SHIRLEY, AND THOMAS F. REILLY, ATTORNEY
GENERAL, RESPONDENTS

_____

ON A PETITION FOR A WRIT OF HABEAS CORPUS

Frederic G. Bartmon
69 South Pleasant Street
Suite 201
Amherst, MA  01002
(413) 253-9700
BBO# 032490

Sarah E. Dolven
69 South Pleasant Street
Suite 201
Amherst, MA  01002
(413) 253-9700
BBO# 638629

SCANNED
DATE: 1/7/04
BY: FoM

## TABLE OF AUTHORITIES

Allison v. Ficco, 284 F. Supp. 2d 182 (D.Mass. 2003)...............35

Bruton v. United States, 391 U.S. 123 (1968).........................24, 25

Commonwealth v. Allison, 434 Mass. 670 (2000)...................35

Commonwealth v. Bianco, 388 Mass. 358 (1983)......................35

Commonwealth v. Campbell, 2003 WL 23014388
     (Mass. App. Ct. December 29, 2003).......................................25

Commonwealth v. Moran, 387 Mass. 644 (1982)............................29, 30

Commonwealth v. Vaughn, 23 Mass. App. Ct. 40 (1986)..................26

Daughtry v. Dennehy, 946 F. Supp. 1053 (D. Mass. 1996).........35

DiBenedetto v. Hall, 176 F.Supp.2d 45 (D. Mass. 2000)............34

Fiore v. White, 531 U.S. 225, 121 S.Ct. 712 (2001).........33, 34

Fortini v Murphy, 257 F.3d 39, 44 (1st Cir. 2001).........................29

In Re Winship, 397 U.S. 358, 90 S.Ct. 1068 (1970).......................34

Jackson v. Virginia, 443 U.S. 307 (1979).....................................34, 37

Kotteakos v. United States, 328 U.S. 750 (1946)...........................23

Mackey v. United States, 401 U.S. 667 (1971)......................22

Manson v. Brathwaite, 432 U.S. 98 (1977)...................................26

O'Brien v. Dubois, 145 F.3d 16 (1st Cir. 1998)...................................34

Pridgen v. Commonwealth of Massachusetts, 537 U.S. 1123,
123 S.Ct. 859 (2003).........................................................................................8

Scarpa v. DuBois, 38 F.3d 1 (1st Cir. 1994),
     cert. denied, 513 U.S. 1129 (1995.........................................................29

Teague v. Lane, 489 U.S. 288 (1989).................................................22

U.S. v. Kavanagh, 572 F.2d 9 (1st Cir. 1978).........................................26

ii

United States v. Benton, 852 F.3d 1456 (6th Cir. 1988),
    cert. denied, 488 U.S. 993 (1988)..............................................26, 27

United States v. Melendez, 301 F.3d. 27 (1st Cir. 2002)..........27

United States v. Edgar, 82 F.3d 499 (1st Cir. 1996).....................27

United States v. Lane, 474 U.S. 438 (1986)................................27, 29

United States v. Romanello, 726 F.2d 173 (5th Cir. 1984)......32

United States v. Tootick, 952 F.2d 1078 (9th Cir. 1991).........28

Williams v. Taylor, 529 U.S. 362 (2000)........................................22, 23

Zafiro v. United States, 506 U.S. 534,
    113 S.Ct. 933
    (1993) ..................................................................................................26, 27, 32

## Other Authorities

Mass R. Crim. P. 9(d) ...........................................................................................2

28 U.S.C. §1331..................................................................................................1

28 U.S. C. §§ 2244-2266....................................................................................21

28 U.S.C. §2254(d)(1)-(2); (e)(1) ..........................................................21, 22

## TABLE OF CONTENTS

I.    PETITION FOR A WRIT OF HABEAS
      CORPUS..................................................................................................................1

II.   OPINIONS BELOW...........................................................................................1

III.  STATEMENT OF THE BASIS FOR JURISDICTION..........................1

IV.   INTRODUCTION................................................................................................2

V.    FACTS......................................................................................................................8

VI.   ARGUMENT........................................................................................................20

      Standard of Review..................................................................21

      1.    The State Court's Decision To Join The
            Petitioner's And His Co-Defendant's
            Trials Constituted An Unreasonable
            Application Of Clearly Established Federal
            Law And Was Based On An Unreasonable
            Determination Of The Facts In Light Of The
            Evidence Presented In The State Court
            Proceeding, Resulting In Prejudice So
            Compelling As To Deny The Petitioner A
            Fair Trial Under The Fourteenth Amendment
            Of The United States Constitution...........................24

      2.    The State Court's Denial Of The Petitioner's
            Motion For A Required Finding Of Not Guilty
            Constituted An Unreasonable Determination
            Of The Facts In Light Of The Evidence
            Presented In The State Court Proceeding
            Because The Evidence Was Insufficient To
            Convict The Petitioner Of Assault And
            Battery By Means Of A Dangerous Weapon
            As A Joint Venturer..................................................33

VI.   CONCLUSION....................................................................................................38

## PETITION FOR A WRIT OF HABEAS CORPUS

Satron Pridgen petitions pursuant to 28 U.S.C. §§2241 and 2254 for a writ of habeas corpus because he is confined by the Commonwealth of Massachusetts under a sentence for Assault and Battery with a Dangerous Weapon in violation of the laws and the Constitution of the United States. Satron Pridgen has never before sought federal habeas corpus relief for this conviction or sentence. This is his first appearance in federal district court for any purpose.

## OPINIONS BELOW

The April 8, 2002 opinion of the Massachusetts Appeals Court denying Petitioner's direct appeal is reported at 54 Mass. App. Ct. 1110 (2002). A copy of the opinion is included in the Appendix hereto as Appendix A.

## STATEMENT OF THE BASIS FOR JURISDICTION

This Court has jurisdiction over this original petition pursuant to 28 U.S.C. §1331 and 28 U.S.C. §§ 2244-2266.

## INTRODUCTION

Satron Pridgen, inmate number W-67352, is confined at the Massachusetts Correctional Institution at Shirley, by Paul Verdini, Superintendent and Bruce Gelb, Deputy. Satron Pridgen is being denied his liberty under an unconstitutional conviction for assault and battery with a dangerous weapon and is being held pursuant to a sentence of not less than nine and not more than ten years. This sentence was imposed by the Worcester District Court on November 19, 1999, following his conviction by jury on November 17, 1999, pursuant to docket number 99-0019-2. The Petitioner's trial was joined with the trial of his brother Toraino Pridgen. On or about June of 1999, Toraino Pridgen moved to sever his trial from the petitioner's pursuant to Massachusetts Rule of Criminal Procedure 9(d), arguing that the brothers were very similar in appearance, and that Toraino Pridgen and the petitioner were planning to raise mutually antagonistic defenses, each portraying the other as the shooter, and that therefore severance was required to ensure a fair trial. The petitioner joined with Toraino Pridgen on this motion. A hearing on the motion to sever was held before Superior Court

2

Judge Martha Sosman[1] on October 1, 1999.  At the
hearing, the Commonwealth argued that joinder was
warranted because numerous witnesses would testify
that both defendants shot the victim.   The
Commonwealth made no argument regarding a joint
venture theory, nor did it respond to the issue of
evidence regarding the identity of the shooter.   Judge
Sosman denied the motion to sever.

On November 15-17, 1999, the Worcester Superior
Court held a jury trial on the instant indictments.[2]
The Commonwealth's evidence was confusing and
misleading as to what role, if any, each defendant
played in the shooting – so much so that even at the
close of the case, as the judge and counsel were
reviewing the jury charge, the judge himself was
confused as to the Commonwealth's theory of the case

---

[1]     Since the trial of this matter, Honorable Justice
Sosman has been appointed to the Supreme Judicial
Court.   Justice Sosman was recused from the Supreme
Judicial Court's review of this matter.
[2]     The transcript of the proceedings in the trial
court is referred to in this petition as follows:
proceedings on November 15, 1999 as "Tr. I/page
number"; proceedings on November 16, 1999 as "Tr.
II/page number"; proceedings on November 17, 1999 as
"Tr. III/page number"; and proceedings on November 19,
1999 as "Tr. IV/page number".

3

[Tr. II/199, 201-204, 207].[3]  At the close of the

Commonwealth's case, both defense counsel moved for

_____

[3]    Prior to the Commonwealth's last witness taking
the stand, the following exchange occurred between
counsel and the judge:
        [THE COURT]:. . . Tell me, Mr. McHugh,
so I can start putting together my
instructions to the jury, what is the
Commonwealth's theory as to responsibility,
first of all, as to Mr. McEvilly's client,
Satron Pridgen?
        [PROSECUTOR]:  This was a joint
venture, your Honor.
        [THE COURT]:  So you are saying that
his responsibility, if any, is solely on the
basis of joint venture?
        [PROSECUTOR]:  That's what I will be
requesting, your Honor. * * *
[Tr. II/199]
        [THE COURT]:  So you want me to
instruct the jury that it is the
Commonwealth's position that the shooter in
this case was Mr. - I don't want to
mispronounce his name - Mr. Toraino Pridgen,
right?  And that liability, if any, can only
be imposed upon Mr. Satron Pridgen if they
conclude that he was a joint venturer; is
that it?
        [PROSECUTOR]:  No, I guess that isn't -
I believe there's enough credible evidence
to support that both of them acted as
shooters in this case, your Honor.
        [THE COURT]:  Well, listen.  You tell
me now how you want me to instruct the jury.
Because if it's the Commonwealth's theory
that Toraino was the triggerman - right? -
they should so be instructed.
        [PROSECUTOR]:  I understand, your
Honor.
        [THE COURT]:  Or are you trying to say,
wait a minute, maybe Toraino was the
triggerman and the other was the joint
venturer?  What is it?

4

[PROSECUTOR]:  My theory is that the victim, Paul Allen, has identified Toraino Pridgen as having shot him in the head, and my other witnesses, principally Nevlina Scott and Leonard Beatty, have identified Satron Pridgen as having the gun and fired [sic] a gun.

[THE COURT]:  But you have charged Toraino with possession of the gun.  Right from the start, it's been the Commonwealth's position that Toraino was the shooter.  He is charged with having carried the gun.

[PROSECUTOR]:  That's correct.

[THE COURT]:  Right?

{PROSECUTOR]:  That's correct.  That's correct.

[THE COURT]:  Well, I am trying to – I am not trying to be difficult with you, sir, but I am just trying to intelligently instruct the jury.  Do you think the jury can go back and say, well, wait a minute, might be Satron was the shooter and he was the joint venturer?  Do you think they can do that?  I mean –

[PROSECUTOR]:  That's a fair question of the Court, and frankly I need a little bit of time to think about it.   * * *

[Tr. II/200-201]

[THE COURT]: . . . I have got to charge on joint venture, but what I would like to do is nail it down.  I am going to tell the jury, look it, it's the Commonwealth's theory in this particular case that the shooter here was Toraino, and he's the principal.  The liability, if any, that may attach to Satron is that he's a joint venturer.  And I will explain joint venture.  Now, you tell me – I am not trying to --

[ATTORNEY STAPLES]:  The only problem is I think the Commonwealth's theory is that both were principals, that both were shooters, and –

[THE COURT]:  I don't know what the Commonwealth's theory is.  When I listened to his opening statement, I thought he was

5

required findings of not guilty, and both motions were denied. [Tr. III/32-33]. Following trial, the petitioner was acquitted of Count One, and convicted of Count Two. Toraino Pridgen was acquitted of Counts One and Two, and convicted of Count Three. [Tr. III/147-152]. Counsel for both defendants then moved orally to set aside the verdicts, [Tr. III/153-154], on the grounds that the Commonwealth advanced a theory of joint venture, without specifying which defendant was the principal and which defendant was the joint venturer. Both defendants were convicted as joint venturers; neither was convicted on a theory of principal liability. [Tr. III/149, 151; Appendix B, Appendix F]. The oral motions were denied.

On November 19, 1999, the petitioner received a sentence of not less than nine and no more than ten years, to be served at MCI Cedar Junction. [Tr. IV/16].

---

going to say that Satron was the guy who shot him in the head. That's what I thought the Commonwealth said. But then as the case has unfolded, and when Allen testified, the whole thing changed, and so I don't know what the Commonwealth's theory is now. . . . [Tr. II/203-204] (Appendix F).

6

The petitioner filed a timely notice of appeal on November 29, 1999. Both the petitioner's and Toraino Pridgen's appeals were docketed in the Appeals Court on January 21, 2001. On appeal, the petitioner argued, in relevant part, that the judge's failure to sever his trial from his co-defendant's created a prejudice so compelling as to deny him a fair trial, and that the evidence of joint venture was insufficient to warrant a conviction. On April 8, 2002, the Appeals Court issued a Memorandum and Order Pursuant to Rule 1:28, affirming the judgments of the lower court, and holding that the judge's failure to sever the petitioner's and his co-defendant's trials did not violate the petitioner's right to a fair trial, and that the evidence of joint venture was sufficient to warrant petitioner's conviction. (Appeals Court Decision at p. 3-5, Appendix A).

On April 29, 2002, the petitioner filed an application seeking leave to obtain further appellate review of the case by the full Supreme Judicial Court, pursuant to Massachusetts Rule of Appellate Procedure Rule 27.1. On June 6, 2002, the Supreme Judicial Court issued a Denial of the petitioner's application for further appellate review. (Appendix C).

7

On or about October 30, 2002, Satron Pridgen filed a Petition for Writ of Certiorari with the United States Supreme Court, alleging violations of the Fourteenth Amendment and denial of due process. On January 13, 2003, the United States Supreme Court denied review of Satron's Petition.

See Pridgen v. Commonwealth of Massachusetts, 537 U.S. 1123, 123 S. Ct. 859 (2003). For the purposes of habeas corpus review, Satron Pridgen's direct appeal was final when the United States Supreme Court denied certiorari review on January 13, 2003. Therefore, this petition for a writ of habeas corpus is timely pursuant to 28 U.S.C. §2244(d)(1), and the petitioner has exhausted his state court remedies as required by 28 U.S.C. §2254(b)(1).

## FACTS

This case arises from a shooting that occurred at 52 Meadowbrook Lane in Fitchburg during the early morning hours of October 25, 1998. The victim of the shooting, Paul Allen, was attending a birthday party being thrown by the occupants of 52 Meadowbrook Lane, Nevlina Scott and her mother, Bridgette Scott. While

8

at the party, Mr. Allen was shot in the head and
chest. [Tr. I/211-212].

   The party started on October 24, 1998 at
approximately eleven-thirty p.m. or twelve o'clock
a.m. [Tr. I/95]. Nevlina Scott was standing at the
front door of the apartment, taking money in the form
of a cover charge from individuals entering the party.
[Tr. I/94].

   Paul Allen arrived at the party at Bridgette
Scott's invitation, in the early morning hours of
October 25, 1998. [Tr. I/205]. He attended the party
with two companions, and after paying to get in, he
was at the party for a short time when he saw two
strangers, a black male and a Spanish male,
"gesticulating" at one another. [Tr. I/205-207]. Mr.
Allen moved toward the door, with the intention of
leaving the party [Tr. I/207], and as he passed by, a
stranger, whom he identified in court as the
petitioner, touched his hand. [Tr. I/209]. He
testified that this person had dreadlocks. [Tr.
I/243-244]. Mr. Allen looked at the person he later
identified as the petitioner, they stared at each
other for a moment, and, according to Mr. Allen's
testimony, the petitioner nodded to someone. [Tr.

9

I/210]. Mr. Allen followed the petitioner's gaze to another stranger he later identified as Toraino Pridgen, and saw that person nod, and then he testified that the second individual (Toraino) put a gun to Mr. Allen's head. [Tr. I/211]. Mr. Allen was shot in the head and chest [Tr. I/212]. He did not see who shot him in the chest. [Tr. I/231-232]. He lost consciousness briefly, was brought to Leominster Hospital and subsequently transferred to UMASS Medical Center. [Tr. I/214-215]. Both bullets are still lodged in Mr. Allen's body. [Tr. I/215]. Seventeen packets of cocaine were found in Mr. Allen's pockets while he was being treated at the hospital for gunshot wounds. [Tr. I/215-217]. Mr. Allen was offered a favorable disposition of criminal charges brought against him for possession of more than fourteen grams of cocaine and trafficking in cocaine in exchange for testifying against the petitioner and co-defendant. [Tr. I/217-219. 244-248, 251].

Nevlina Scott testified that she saw the petitioner getting into a "confrontation" with a Hispanic male named Alberto Brogan,[4]  [Tr. I/97-98,

---

[4]     Detective Kenneth Maynard of the Fitchburg Police Department briefly interviewed Alberto Brogan and

10

II/174], and that "Satron was asking [Brogan] if he
had a problem with Scooby and Shaggy, and [telling him
that] if he had a problem with Scooby and Shaggy, then
he had a problem with him." [Tr. I/98].[5]  She asked
the defendants to leave the party, and testified that
the petitioner then pulled a gun out of his pocket,
pointed it at Alberto Brogan's temple, and said, "I'll
fucking shoot you." [Tr. I/99-100]. She also
testified that during the confrontation, Toraino
Pridgen was "instigating" and telling the petitioner
to "just shoot him," referring to Alberto Brogan.
[Tr. I/103]. None of the other witnesses testified as
to hearing any conversation or interchange between the
petitioner and Toraino Pridgen. [Tr. I/200; I/241;
II/33]. There was no connection between Alberto Brogan
and Paul Allen; the two men did not know each other.

    The eyewitnesses' testimony was contradictory
with regard to what type of gun was used in the

---

attempted to locate him as a material witness;
however, the information he gave to Detective Maynard
about his whereabouts was false and the Fitchburg
Police were unable to locate him. [Tr. II/174].
During the interview Mr. Brogan stated that the room
was dark, that the culprits were wearing hats, and
that he could not identify the shooters. [Tr. II/177-
178].
5    According to Nevlina Scott, "Scooby" and "Shaggy"
were street names for two brothers named Hiram and
Hanok Boddie. [Tr. I/98-99].

11

shooting of Paul Allen, [Tr. I/243; II/29] [Tr. I/102]
[Tr. I/164], how many shots were fired, who fired the
shots, and what the defendants looked like on the
night in question.  No one witness testified to seeing
more than one gun, or more than one shooter.  There
was simply conflicting evidence as to the identity of
the shooter.

Nevlina Scott's testimony throughout the
proceedings was inconsistent with regard to whether
she saw either of the defendants actually firing a
gun.  At the petitioner's motion to suppress hearing,
she testified that she saw the petitioner fire a gun
while, at trial, she testified that she heard the
first shot ring out as she was turning around, but she
did not see it or who fired the shot.  [Tr. I/101].
When she saw the gun, she went out the front door and
ran around to the back of the house to the back door,
and as she was running back around the side of the
building to the front, she heard two more shots.  [Tr.
I/101-102].  She described the petitioner as having
his hand in the air, "like shooting at the house."
[Tr. I/102].  Bridgette Scott testified that the
shooter "reached over and shot over the crowd because
there was like [sic] people standing in between the

12

victim and the shooter." [Tr. I/165]. She testified
that about three shots were fired. [Tr. I/165].
According to Mr. Beatty, he attempted to subdue the
individual with the gun, [Tr. II/27], and as the two
were struggling, the shooter "got off three shots" in
rapid succession. [Tr. II/28].

Bridgette Scott testified that she was in the
kitchen at 52 Meadowbrook Lane helping her sister
serve food [Tr. I/161], and she heard "some commotion
going on at the front of the apartment." [Tr. I/162].
She testified that the shooting occurred as she was
walking to the front of the apartment from the
kitchen. [Tr. I/162]. On cross-examination, however,
she stated that she was standing next to the arguing
individuals "when the altercation was happening," [Tr.
I/195], and "when everything transpired," [Tr. I/196],
and that she heard Paul Allen laughing just before the
shooting occurred. [Tr. I/195-196]. At trial, she
identified the petitioner as the shooter. [Tr.
I/164]. However, she admitted that immediately after
the shooting, she told the police she was not sure who
the shooter was. [Tr. I/200-201].

On October 27, 1998, Detective Kenneth Maynard
and Sergeant O'Leary of the Fitchburg Police

13

Department interviewed Mr. Allen at UMASS Medical
Center. [Tr. II/164]. Mr. Allen identified the
petitioner from a photo array as the shooter. [Tr.
I/220, II/151]. He identified a third individual, not
Toraino, as the person who was with the petitioner.
[Tr. II/168]. At the time, he was being sedated by a
morphine drip in his hand, but he testified that he
was lucid. [Tr. I/220-221]. However, on cross-
examination he testified that he did not believe he
was clear-minded on that day. [Tr. I/237].

On November 11, 1998, Mr. Allen went to the
Fitchburg police station, where he was again shown the
same photo array. [Tr. II/152]. By this time he was
off medication and testified he was "a lot better."
[Tr. I/221]. At this second interview, he identified
both the petitioner and Toraino Pridgen. [Tr. I/221].
Mr. Allen testified that the petitioner was standing
close to him when he was shot, but that he never saw
anything in the petitioner's hand. [Tr. I/231-232].
The lighting was dim in the apartment [Tr. I/240].

On December 18, 1998, Mr. Allen went to the
Fitchburg Police Station a second time and identified
Toraino Pridgen, from the same photo array, as the
person who shot him in the head, and the petitioner as

14

the person who was standing close to him. [Tr. I/232-233, II/153-154]. Mr. Allen did not see the petitioner with a gun. [Tr. I/212-213].

Mr. Beatty met with Detective Maynard and others on October 29, 1998 [Tr. II/36] and again in May of 1999. [Tr. II/35]. On cross-examination he admitted that although he selected the petitioner's photo from a photo array on October 29, 1998, he was unsure about the identification because the photo "looked like the individual that shot the gun that night, but he had dreads. The person in the photo did not have dreads." [Tr. II/37]. In fact, Mr. Beatty identified Toraino Pridgen as the shooter. [Tr. II/38]. In court, Mr. Beatty tentatively identified the petitioner as one of the individuals who "pulled a weapon out." [Tr. II/26]. However, on cross-examination he admitted that he could not say on the stand which one of the defendants fired the weapon. [Tr. II/40].

Officer Thomas Leger of the Fitchburg Police Department testified that he spoke to Leonard Beatty at the scene on October 25, 1998. [Tr. II/41-42]. Officer Leger testified that Leonard Beatty identified the petitioner as the shooter. [Tr. II/45].

15

Two police officers who testified for the
Commonwealth, Officer Jesus Morales and Detective
Michael Peaslee, were unable to correctly identify the
defendants at trial.[6]

Members of the Fitchburg Police Department and
the Massachusetts State Police participated in the
investigation of this incident. Massachusetts State
Trooper John Schrijn recovered two .25 caliber
automatic discharge cartridge casings from the
apartment [Tr. I/263]. The police laboratory
determined that both casings were discharged from the
same "unknown weapon", [Tr. I/267], but no gun was
found at the scene. [Tr. I/267, II/144]. No latent
prints were found on the cartridge casings. [Tr.
I/270]. Trooper Schrijn found no other indication
that more than two shots had been fired. [Tr. I/274].
As the bullets remained lodged in Allen's body, no
conclusions about the size, weight or similarity of
the bullets could be made. [Tr. 275-277]. Dr.

---

[6] Officer Jesus Morales, testifying about events
subsequent to the shooting, could not identify which
one of the defendants was Toraino Pridgen. [Tr.
II/125-128]. Detective Peaslee testified about the
same series of events. While on the stand, Detective
Peaslee initially mis-identified the petitioner as
Toraino Pridgen. [Tr. II/133].

16

Timothy Counihan, who treated Paul Allen at UMASS
Medical Center, could not draw any conclusions about
the trajectory of the bullets that hit Mr. Allen.
[Tr. II/75].

Massachusetts State Troopers Robert O'Neil and
Sean Murphy took photographs [Tr. I/286] and footwear
impressions at the scene.  [Tr. I/289].  The footwear
impressions matched Paul Allen's shoes.  [Tr. I/295].

Throughout the course of the trial, Toraino
Pridgen maintained that the petitioner was the shooter
and that Toraino neither knew that the petitioner had
a gun nor shared in the petitioner's criminal intent.
[Tr. I/82-85; III/39, 48, 53, 57-68].  The evidence
was inconsistent as to which one of the defendants
possessed a weapon or fired it, and as to which one of
the defendants shot Paul Allen.  The record indicates
that the parties, including the trial judge, were
confused as to the facts and the Commonwealth's theory
of the case.  [Tr. II/199, 201-204, 207] (Appendix F).[7]

---

[7]     Prior to the Commonwealth's last witness taking
the stand, the following exchange occurred between
counsel and the judge:

[THE COURT]:.  .  . Tell me, Mr. McHugh, so I can
start putting together my instructions to the jury,
what is the Commonwealth's theory as to
responsibility, first of all, as to Mr. McEvilly's
client, Satron Pridgen?

17

[PROSECUTOR]:  This was a joint venture, your
Honor.
    [THE COURT]:  So you are saying that his
responsibility, if any, is solely on the basis of
joint venture?
    [PROSECUTOR]:  That's what I will be requesting,
your Honor. * * *
[Tr. II/199]
    [THE COURT]:  So you want me to instruct the jury
that it is the Commonwealth's position that the
shooter in this case was Mr. – I don't want to
mispronounce his name – Mr. Toraino Pridgen, right?
And that liability, if any, can only be imposed upon
Mr. Satron Pridgen if they conclude that he was a
joint venturer; is that it?
    [PROSECUTOR]:  No, I guess that isn't – I believe
there's enough credible evidence to support that both
of them acted as shooters in this case, your Honor.
    [THE COURT]:  Well, listen.  You tell me now how
you want me to instruct the jury.  Because if it's the
Commonwealth's theory that Toraino was the triggerman
– right? – they should so be instructed.
    [PROSECUTOR]:  I understand, your Honor.
    [THE COURT]:  Or are you trying to say, wait a
minute, maybe Toraino was the triggerman and the other
was the joint venturer?  What is it?
    [PROSECUTOR]:  My theory is that the victim, Paul
Allen, has identified Toraino Pridgen as having shot
him in the head, and my other witnesses, principally
Nevlina Scott and Leonard Beatty, have identified
Satron Pridgen as having the gun and fired [sic] a
gun.
    [THE COURT]:  But you have charged Toraino with
possession of the gun.  Right from the start, it's
been the Commonwealth's position that Toraino was the
shooter.  He is charged with having carried the gun.
    [PROSECUTOR]:  That's correct.
    [THE COURT]:  Right?
    {PROSECUTOR]:  That's correct.  That's correct.
    [THE COURT]:  Well, I am trying to – I am not
trying to be difficult with you, sir, but I am just
trying to intelligently instruct the jury.  Do you
think the jury can go back and say, well, wait a
minute, might be Satron was the shooter and he was the
joint venturer?  Do you think they can do that?  I
mean –

18

Counsel for both defendants moved for required

findings of not guilty at the close of the

Commonwealth's case. [Tr. III/32-33]. In its closing

argument, the Commonwealth relied heavily on Mr.

Allen's testimony that the petitioner nodded to

Toraino Pridgen as evidence of a joint venture between

the two defendants, [Tr. III/91], and on the

discrepancies between the witnesses' descriptions of

the gun, to suggest to the jury that perhaps both

defendants were the shooters. [Tr. III/91-94]. The

---

[PROSECUTOR]:  That's a fair question of the
Court, and frankly I need a little bit of time to
think about it.  * * *
[Tr. II/200-201]

[THE COURT]: . . . I have got to charge on joint
venture, but what I would like to do is nail it down.
I am going to tell the jury, look it, it's the
Commonwealth's theory in this particular case that the
shooter here was Toraino, and he's the principal.  The
liability, if any, that may attach to Satron is that
he's a joint venturer. And I will explain joint
venture.  Now, you tell me – I am not trying to –-
       [ATTORNEY STAPLES]:  The only problem is I think
the Commonwealth's theory is that both were
principals, that both were shooters, and –
       [THE COURT]:  I don't know what the
Commonwealth's theory is. When I listened to his
opening statement, I thought he was going to say that
Satron was the guy who shot him in the head.  That's
what I thought the Commonwealth said.  But then as the
case has unfolded, and when Allen testified, the whole
thing changed, and so I don't know what the
Commonwealth's theory is now. . . .
[Tr. II/203-204] (Appendix F).

19

Commonwealth's joint venture theory was based on the
vague assertion that "there [was] enough credible
evidence to support that both of them acted as
shooters." [Tr. II/200]. Both defense counsel
expressed concern about a joint venture instruction,
[Tr. II/204, 210-211], as did the Court. [Tr. II/207]
(Appendix F).[8] The Court did instruct the jury on
joint venture, [Tr. III/124-129], and in its
instructions, essentially left the issue up to the
jury, requiring them to indicate on the verdict slip
which theory, if any, they relied upon to convict the
defendants if they so determined. [Tr. III/139-140].

## ARGUMENT

Petitioner Satron Pridgen is being confined in a
Massachusetts Correctional Institution in violation of
the Constitution of the United States of America.

Pursuant to Federal constitutional law and the
authority of this Court, habeas corpus relief must be

---

[8]    [THE COURT]: So if I may, Mr. McHugh, what you
are saying is this, throwing it to the jury and
saying, okay, jury, you figure out who did the
shooting.  Right?  But if you are saying, if you
conclude that Mr. Satron Pridgen did the shooting,
Toraino was a joint venturer.  If you think Toraino
was - is that what you want to say?
       [PROSECUTOR]: Yes, your Honor.
[Tr. II/207] (Appendix F).

20

granted, and the Commonwealth ordered to release the

petitioner or give him a new trial.


Standard of Review

Petitions for federal habeas corpus by prisoners

in state custody are governed by the Anti-Terrorism

and Effective Death Penalty Act of 1996, 28 U.S. C. §§

2244-2266 ("AEDPA").  The AEDPA provides, in relevant

part, that

An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated on
the merits in State court proceedings unless the
adjudication of the claim -

(1)

resulted in a decision that was contrary
to, or involved an unreasonable application
of, clearly established Federal law, as
determined by the Supreme Court of the United
States; or

(2)

resulted in a decision that was based on an
unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding.

(e)

(1)

> In a proceeding instituted by an
> application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of
> a State court, a determination of a factual
> issue made by a State court shall be presumed
> to be correct. The applicant shall have the
> burden of rebutting the presumption of
> correctness by clear and convincing evidence.

28 U.S.C. §2254(d)(1)-(2); (e)(1).

Habeas corpus relief is appropriate where "errors
[have occurred] that undermine confidence in the
fundamental fairness of the state adjudication."
Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct.
1495, 1503 (2000), citing Teague v. Lane, 489 U.S.
288, 311-314, 109 S. Ct. 1060, 1075-1077 (1989),
quoting Mackey v. United States, 401 U.S. 667, 692-
694, 91 S. Ct. 1160 (1971).

In the instant matter, the petitioner asserts
that habeas review is warranted because (1) the state
court decision was an unreasonable application of
clearly established Federal law, because the court
"identifie[d] the correct governing legal principle
from [the United States Supreme Court's] decisions but
unreasonably applie[d] that principle to the facts of
the prisoner's case," Williams, 529 U.S. at 413, 120
S. Ct. at 1523; 28 U.S.C. §2254(d)(1); and (2), "the
state court decision

22

'was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.'" <u>Williams</u>, 529 U.S. at 386, quoting 28 U.S.C. §2254(d)(2). The state court's errors "had substantial and injurious effect or influence in determining the jury's verdict," <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946).

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

> <u>Kotteakos v. United States</u>, 328 U.S. 750, 764-765. 66 S. Ct. 1247-1248 (1946).

The following are the grounds for relief presented by the petitioner in support of his petition for a writ of habeas corpus.

23

I.   THE STATE COURT'S DECISION TO JOIN THE
PETITIONER'S AND HIS CO-DEFENDANT'S TRIALS CONSTITUTED
AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED
FEDERAL LAW AND WAS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE
PRESENTED IN THE STATE COURT PROCEEDING, RESULTING IN
PREJUDICE SO COMPELLING AS TO DENY THE PETITIONER A
FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT OF THE
UNITED STATES CONSTITUTION.

The state court's denial of petitioner's motion
to sever deprived him of his right to a fair trial
under the Fourteenth Amendment of the United States
Constitution because, throughout the trial, the
evidence presented was fundamentally weak, confusing,
inconsistent and inconclusive as to the petitioner's
involvement in the crime.   The Commonwealth's evidence
was riddled with inconsistencies regarding the
identification of the shooter or shooters.   Witness
testimony was conflicting as to which defendant
possessed or fired a weapon, which defendant shot the
victim, and whether either of the defendants knew the
other was carrying a gun or shared in the other's
criminal intent.   Some witnesses testified that the
petitioner was the shooter; others testified that the
co-defendant was the shooter.   Police officers
misidentified the defendants or were unable to
distinguish between them. Despite the Commonwealth's
argument at closing that "there [was] enough credible

24

evidence to support that both of them acted as shooters," [Tr. II/200], none of the witnesses testified to seeing more than one gun or one shooter. Only one kind of shell casing was found, supporting the existence of only one gun. In contrast to the weak and confusing evidence about which defendant was the shooter, virtually no evidence of joint venture was presented at trial.

The crucial issue in this case was identification. The evidence consistently supported the existence of a single gun and a single shooter; however, as a whole, the evidence failed to indicate which man was the shooter. Identity is an element of any criminal offense, for which proof beyond a reasonable doubt is required. However, the Commonwealth produced little to no evidence clarifying the identity of the shooter. The issue of proving identification beyond a reasonable doubt was obscured by misuse of joint venture theory and a joint trial. The presentation of this case as a joint venture case prevented the jury from being able to "weigh the identification testimony against the evidence offered to support a defense." Commonwealth v. Campbell, 2003 WL 23014388 (Mass. App. Ct. December 29, 2003), citing

25

Commonwealth v. Vaughn, 23 Mass. App. Ct. 40, 43
(1986).

This was a case where "[t]he trustworthiness of
the eyewitness identifications was an important
factual issue for the jury to resolve." U.S. v.
Kavanagh, 572 F.2d 9, 12 (1st Cir. 1978) (citations
omitted); see also Manson v. Brathwaite, 432 U.S. 98,
116, 97 S. Ct. 2243, 2253 (1977) ("Juries are not so
susceptible that they cannot measure intelligently the
weight of identification testimony that has some
questionable feature.") Instead, the jury was forced
to consider the evidence under the theory that there
were two shooters, despite the lack of evidence to
support that theory. This is borne out by the jury's
convictions of both defendants as joint venturers.

Due Process requires that a court "should grant a
severance [of defendants] . . . only if there is a
serious risk that a joint trial would compromise a
specific trial right of one of the defendants, or
prevent the jury from making a reliable judgment about
guilt or innocence." Zafiro v. United States, 506
U.S. 534, 539, 113 S.Ct. 933, 938 (1993).

In order to prevail, a defendant must present
"factually specific and compelling prejudice resulting

26

from a joint trial," United States v. Benton, 852 F.3d
1456, 1469 (6th Cir. 1988), cert. denied, 488 U.S. 993
(1988) (citations omitted), against which the trial
court could offer him no protection.  The prejudice
must be "actual," meaning that the error had a
"substantial and injurious effect or influence in
determining the jury's verdict."  United States v.
Melendez, 301 F.3d. 27, 36 (1st Cir. 2002), quoting
United States v. Edgar, 82 F.3d 499, 504 (1st Cir.
1996), quoting United States v. Lane, 474 U.S. 438,
449, 106 S. Ct. 725, 732 (1986).

     The instant case presents precisely the type of
situation against which the Zafiro court cautioned,
where joinder compromises the petitioner's right to a
fair trial and prevents the jury from making a
reliable judgment about the petitioner's guilt or
innocence.  The confusing nature of the Commonwealth's
evidence, specifically the questionable identification
evidence, couched in a joint venture theory, forced
the jury to only one possible conclusion, aptly
described by the judge during the charging conference:
"It's crystal clear that one of those two guys shot
the bullet into [the victim's] head."  [Tr. IV/9].
Despite the fact that the identification evidence was

                              27

clearly insufficient to establish guilt beyond a
reasonable doubt, the jury was effectively compelled
to either choose between the two defendants or convict
them both because the evidence suggested that one of
them, but not both, committed the crime, but yet did
not conclusively point to either one.

Thus it was not surprising that the jury
convicted both men, and the Special Verdict slips
revealed that both defendants were convicted as joint
venturers, with neither man as the principal. This
result made clear that, faced with weak, confusing and
conflicting evidence concerning identification, the
jury unjustifiably inferred that both defendants were
guilty as non-shooters. See United States v. Tootick,
952 F.2d 1078, 1082 (9th Cir. 1991) ("Prejudice will
exist if the jury is unable to assess the guilt or
innocence of each defendant on an individual and
independent basis."). Here, the Commonwealth
attempted to obviate the insufficient evidence of
identification by the joinder of defendants at trial
and the impermissible use of joint venture theory.

The state appellate court held that the joinder
of the petitioner's trial with his brother's trial was
proper because the two men did not present "mutually

28

antagonistic or irreconcilable defenses". (App.
Opinion at p. 2).  This decision was both an
unreasonable application of clearly established
federal law and was reached through an unreasonable
application of the law to the facts presented at the
state court proceedings, thereby warranting habeas
relief.  The Supreme Court has long recognized the
need to safeguard against prejudicial joinder. United
States v. Lane, 474 U.S. at 449, 106 S. Ct. at 732
(1986).

     The appellate court held that the joinder of
petitioner's and his co-defendant's trials was proper
because the two men did not present "mutually
antagonistic and irreconcilable defenses." (Appendix
A at p. 2); Commonwealth v. Moran, 387 Mass. 644, 651-
661 (1982).[9]  The Court based this conclusion upon its
finding that there was eyewitness testimony regarding
who committed the crime and how it was committed.  The

---

[9]     While the state Appeals Court decision cites only
Massachusetts law, the petitioner's brief presented
claims under the U.S. Constitution that "ma[d]e it
probably that a reasonable jurist would have been
alerted to the existence of a federal question,"
Fortini v Murphy, 257 F.3d 39, 44 (1st Cir. 2001),
quoting Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994),
cert. denied, 513 U.S. 1129 (1995).  Therefore,
petitioner has exhausted his available state remedies
as required under 28 U.S.C. §2254(b)(1).

Court distinguished the instant case from Commonwealth
v. Moran on the basis that in Moran, there were no
eyewitnesses to the crime, and the only testimonial
evidence was that of the defendants, in which each
claimed innocence and implicated the other. 387 Mass.
at 659.  Here, although there were several
eyewitnesses in this case, their testimony was not
helpful.  At times, eyewitnesses actually testified to
a lack of knowledge of critical aspects of the actual
shooting.  In the end, the eyewitness testimony failed
to establish either who committed the crime, or the
manner of its accomplishment. Moran can and must be
distinguished from the instant case because in Moran,
eyewitness testimony offered clear evidence regarding
the identification and role of each joined defendant
in the charged offense, thereby allowing the
Commonwealth to sustain its burden of proof without
slight of hand.  In contrast, in the instant case, the
existence of several eyewitnesses does not mitigate
the unreliability of their identification testimony.
As such, the use of the holding in Moran to uphold the
joinder of defendants at trial is a misapplication of
state law.

The appellate court also held that the defenses
presented were neither mutually antagonistic nor
irreconcilable because the defendants were not
"pointing the finger" at each other [App. Opinion at
p. 3]. The court focused on the fact that Toraino
Pridgen's primary defense was that the evidence of his
culpability either as the shooter or as a joint
venturer was "confusing and unreliable," [Appendix A
at p. 3], as opposed to being exclusively an
assignment of blame to the petitioner.[10]  However, the
record shows that Toraino Pridgen's counsel argued
that the evidence pointed to the petitioner and that
Toraino Pridgen never had a gun or encouraged the
shooting.  [Tr. I/83, III/39, 48, 53, 57-68].
Although the petitioner's defense was insufficiency of
the evidence, and the petitioner did not directly
point the finger at Toraino Pridgen, his claim of
innocence operated to concentrate the blame on Toraino
Pridgen. The fact that these two defendants were not
overtly pointing the finger at each other does not
mean that their defenses were reconcilable.  Mutual

---

[10] It is entirely proper that, in zealously advocating
for his client, that Toraino Pridgen's attorney would
draw the jury's attention to the myriad discrepancies
in the Commonwealth's case, and not focus solely on
one defense.

31

exclusivity of defenses may exist when "only one
defendant accuses the other, and the other denies any
involvement." United States v. Tootick, 952 F.2d 1078,
1081, (9th Cir. 1991), quoting United States v.
Romanello, 726 F.2d 173, 177 (5th Cir. 1984).

The state court decision was an unreasonable
application of clearly established federal law in that
the court failed to follow the holding of Zafiro v.
United States, and allowed and affirmed the joinder of
the defendants' trials despite the existence, in the
form of weak identification evidence overcome by
impermissible joinder and misuse of joint venture
theory, of a "serious risk that a joint trial would
compromise a specific trial right of one of the
defendants, or prevent the jury from making a reliable
judgment about guilt or innocence", id. at 539.
Likewise, the state court unreasonably determined the
facts from the evidence presented at trial, holding
that the defenses were not mutually antagonistic or
irreconcilable when the facts clearly supported such a
finding.  The evidence is clear and convincing that
the denial of the motion to sever was erroneous, see
28 U.S.C. §2254(e)(1); therefore, habeas review of the
petitioner's claim is warranted.

32

II.  THE STATE COURT'S DENIAL OF THE PETITIONER'S
MOTION FOR A REQUIRED FINDING OF NOT GUILTY
CONSTITUTED AN UNREASONABLE DETERMINATION OF THE FACTS
IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT
PROCEEDING BECAUSE THE EVIDENCE WAS INSUFFICIENT TO
CONVICT THE PETITIONER OF ASSAULT AND BATTERY BY MEANS
OF A DANGEROUS WEAPON AS A JOINT VENTURER.

The petitioner's conviction as a joint venturer
was based on insufficient evidence,[11] specifically
evidence characterizing a nod which witnesses
testified had passed between the two defendants
immediately prior to the shooting as a nod "in
agreement," which was ruled inadmissible at trial but
which the appellate court relied on in reaching its
decision.  Thus, petitioner was deprived of his
constitutional right to due process when the judge
denied his motion for a required finding of not guilty
on this basis.

The United States Supreme Court has held that
"the Due Process Clause of the Fourteenth Amendment
forbids a State to convict a person of a crime without
proving the elements of that crime beyond a reasonable

---

[11]   Petitioner incorporates herein the same argument
he makes in Section I, infra.  Namely, as with the
obfuscation of the identity issue caused by joinder,
use of joint venture theory to convict the defendant,
where such a theory is not supported by the evidence,
operated to allow for petitioner's conviction where
proof beyond a reasonable doubt of the identity of the
[lone] shooter was lacking.

33

doubt." <u>Fiore v. White</u>, 531 U.S. 225, 228-229, 121 S.Ct. 712, 714 (2001), citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781 (1979), and <u>In Re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970). Such is the case here. Without sufficient evidence of joint venture, the petitioner's conviction constituted a violation of the Due Process clause of the Fourteenth Amendment of the United States Constitution.

"The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. at 319. 99 S. Ct. at 2789. The First Circuit has recognized this standard and held that it "sufficiently shape[s] the contours of an appropriate analysis of a claim of constitutional error to merit review of the state court's decision under section 2254(d)(1)'s "contrary to" prong." <u>DiBenedetto v. Hall</u>, 176 F.Supp.2d 45, 65 (D. Mass. 2000), quoting <u>O'Brien v. Dubois</u>, 145 F.3d 16, 25 & n.6 (1st Cir. 1998).

Pursuant to Massachusetts law, conviction under a joint venture theory requires proof that the defendant

34

was "(1) present at the scene of the crime, (2) with
knowledge that another intends to commit the crime or
with intent to commit a crime, and (3) by agreement is
willing and available to help if necessary." Allison
v. Ficco, 284 F. Supp. 2d 182 (D. Mass. 2003), citing
Commonwealth v. Allison, 434 Mass. 670, 675 (2000),
citing Commonwealth v. Bianco, 388 Mass. 358, 366-367
(1983); see also Daughtry v. Dennehy, 946 F. Supp.
1053, 1063-1064 (D. Mass. 1996). While the evidence
clearly placed the petitioner at the scene, it did not
support a finding that the second and third prongs of
joint venture had been met.

There was no evidence presented at trial
conclusively establishing that the defendants acted in
concert.  The only evidence presented to support the
Commonwealth's theory that the petitioner was a joint
venturer was testimony describing a "nod" made by the
petitioner to Toraino Pridgen, during the altercation
with Alberto Brogan – a third party who was *not* the
victim in this case – immediately preceding the
shooting.  The Appeals Court relied upon the
confrontation between the defendants and Brogan,
citing Toraino Pridgen's "encouraging Satron to shoot"
as well as characterizing the nod that passed between

35

the petitioner and Toraino Pridgen as a "nod in
agreement," as support for its finding that the
brothers "were acting in concert." [Appendix A at p.
4]. However, the confrontation with Brogan cannot be
applied to the instant indictments where a different
person is the victim.  The nod, which occurred during
the confrontation with Brogan, cannot support an
inference beyond a reasonable doubt that the
petitioner knew that the shooting of Allen was about
to occur and that he was ready to join in.  Moreover,
the state court apparently overlooked the fact that
Paul Allen's testimony describing the nod as one "in
agreement" was vigorously objected to by Toraino
Pridgen's defense counsel, and the judge limited the
victim's testimony to what he saw and did with regard
to the nod.  [Tr. I/210-211].[12]

---

[12]     In response to questioning about what transpired
immediately before he was shot, Paul Allen testified
as follows:
     [Prosecutor]:  What happened next?
     [Witness]:     While looking at him, I
     continued staring at the gentleman, he
     looked towards my left, which is his right,
     towards the door.
     [Prosecutor]:  And who was he looking
     towards?
     [Witness]:     I followed his eyes to see
     who or where he was looking, and that's
     where I saw the other gentleman.

36

The state court concluded that the evidence was "clearly sufficient" to convict the petitioner on a joint venture basis. While the state court used the appropriate legal standard consistent with Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979), the state court's decision constituted an unreasonable application of that standard. The evidence was insufficient to prove the second and third elements of joint venture, and therefore the court's denial of the petitioner's motion for a required finding of not guilty was erroneous and deprived the petitioner of his due process rights under the United States Constitution.

```
[Prosecutor]: You are indicating Toraino?
He was looking towards his brother Toraino?
[Witness]:    Yes.
[Prosecutor]: Towards Toraino is your left?
[Witness]:    Yes.
[Prosecutor]: Satron is in front of you?
[Witness]:    Yes.
[Prosecutor]: What happened next?
[Witness]:    I saw a nod in agreement.  I
don't know what they were agreeing on -
[Mr. Staples]: Objection. Move to strike.
[COURT]:      He may describe what he saw.
[Prosecutor]: You saw this gentleman
nodding towards this gentleman?
[Witness]:    Yes.
[Prosecutor]: Then what happened?
[Witness]:    Next thing I know, nod in
agreement, I saw -
[Mr. Staples]: Objection, Judge.
[COURT]:      He may describe what he did.
[Tr. I/210-211].
```

37

Therefore, habeas corpus relief should be granted as to the petitioner's second claim.

## CONCLUSION

For the foregoing reasons, the petitioner respectfully requests that this Court grant his application for a writ of Habeas Corpus and provide him with the appropriate relief, either in the form of a new trial, or by releasing him from incarceration and granting him liberty.

Respectfully Submitted,
SATRON PRIDGEN, by

Frederic G. Bartmon
BBO #032490
ALLISON & BARTMON, LLP
69 South Pleasant Street
Amherst, MA 01002
(413) 253-9700


Sarah E. Dolven
BBO# 638629
ALLISON & BARTMON, LLP
69 S. Pleasant Street
Amherst, MA 01002
(413) 253-9700